IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:09CR203 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| JOHN GERALD GIESSINGER, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant John Gerald Giessinger (Giessinger) (Filing No. 25). Giessinger is charged in the Indictment with the March 6, 2009, possession of a firearm after having been convicted of three felonies (Count I) in violation of 18 U.S.C. § 922(g)(1) and a forfeiture count (Count II) in violation of 18 U.S.C. § 924(d).

Giessinger seeks to suppress: (1) evidence obtained during the execution of a search warrant issued by the County Court of Douglas County, Nebraska, on March 6, 2009; and (2) various statements allegedly made by Giessinger in response to law enforcement questioning following his detention and arrest on March 6, 2009.

The court held an evidentiary hearing on the motion on October 13, 2009. Giessinger was present for the hearing along with his appointed counsel, Donald L. Schense. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. The court heard the testimony of OPD Officer Dan Martin (Officer Martin). The court received into evidence a copy of the application and affidavit, search warrant and return for 621 William Street, Omaha, Nebraska (Exhibit 1); an OPD Rights Advisory Form (Exhibit 2); a copy of an audio tape of the OPD interview of Giessinger on March 6, 2009. A transcript (TR.) of the hearing was filed on October 21, 2009 (Filing No. 36), at which time the motion was deemed submitted.

**FINDINGS OF FACT**

On March 5, 2009, Officer Martin swore to an affidavit and application for a search warrant before a county judge of Douglas County to search the premises at 621 William

Street in Omaha, Nebraska. The affidavit and application (Exhibit 1) contained the following information:

> Your Affiant Officer has been a sworn police officer with the Omaha Police Department, Omaha, Douglas County, Nebraska, for approximately 4 ½ years. Over the course of employment with the department the Affiant Officer has investigated numerous crimes including robbery, burglary, felony assault, and narcotic offenses. The Affiant Officer currently works in the Criminal Investigatin [sic] Bureau for the Omaha Police Department and is responsible for investigating all types of crimes including those previously mentioned.
>
> Within the last week Affiant Officer Dan Martin #1793 had the occasion to meet with a Confidential Reliable Informant, hereafter referred to as the C/I. This C/I has provided the Omaha Police Department with reliable information in the past that has lead to several arrests, and the recovery of stolen property.
>
> The C/I advised Affiant Officers that within the last week he/she had gone to 621 William St., Omaha, Douglas County, Nebraska, to meet a friend, later identified as John Giessinger. The C/I advised, while he/she was at GIESSINGER'S residence he/she observed a Harmon Kardon stereo receiver, a large flat screen TV, a Nintendo Wii gaming system, and several other electronic items the C/I believes to be stolen. The C/I believes these to be stolen because he has witnessed GIESSINGER exchange stolen property for methamphetamine in the past, and knows that GIESSINGER does not have a job to pay for these items. The C/I stated that in the past GIESSINGER has asked him/her to bring him items knowing they are stolen in exchange for methamphetamine.
>
> The C/I advised Affiant Officers that he/she is aware of suspects who steal electronic items then give them to GIESSINGER in exchange for methamphetamine, because he has witnessed such transactions. On Monday, January 19, 2009 a burglary report was taken from 4708 S. 46th Ave, Omaha, where it lists Harmon Kardon stereo receiver and a 50" Samsung flat screen TV as being taken.
>
> The C/I advised that while he/she was at GIESSINGER'S residence he/she observed a pipe used for smoking methamphetamine and approximatley [sic] two grams of

> methamphetamine on a table in the living room. The C/I stated he/she is familiar with the use, appearance and packaging, and sales of methamphetamine.
>
> The C/I further stated that he/she has seen guns in the residence before and advised that GIESSINGER was bragging about shooting a cigarette out of his girlfriends [sic] mouth a few nights prior. It should be noted that GIESSINGER is a convicted felon.
>
> Affiant Officer believes, if he were granted this court authorized search warrant, he would find stolen property including a flat screen television, a Harmon Kardon Receiver, Wii Gaming System, Methamphetamine, and firearms.

(Exhibit 1; TR. 6). The judge issued the search warrant requested. The search warrant was executed on March 6, 2009, by a SWAT team and detectives from the South Investigations and the Major Crimes units (TR. 7). The SWAT team made forcible entry and detained the individuals, including Giessinger, who were in the residence (TR. 7). Following the SWAT team's entry, the detectives entered the residence and began the search while Officer Martin took Giessinger aside to talk with him (TR. 7).

Officer Martin orally advised Giessinger of *Miranda* rights, which Giessinger acknowledged (TR. 9). Giessinger was asked about firearms in the residence (TR. 9). Giessinger told Officer Martin about the firearms which were in the residence, and the firearms were located where Giessinger said they were located (TR. 10). Following the discovery of the firearms and drugs, Giessinger was arrested and transported to Central Police Headquarters (TR. 11). There, Giessinger was interviewed in a fourth floor interview room by Officer Martin who advised Giessinger of *Miranda* rights using an OPD Rights Advisory Form (TR. 12; Exhibit 2). Exhibit 3 is an audio tape which was to be a copy of the recording of Giessinger's interview. However, Exhibit 3 is blank.

## CONCLUSION OF LAW

Giessinger asserts the affidavit for the search warrant is insufficient and any statements Giessinger made following the execution of the search warrant were fruits of the poisonous tree and should be excluded.

**1. Sufficiency of the Affidavit**

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, *Search & Seizure* § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Jeanetta*, 533 F.3d 651, 654 (8th Cir. 2008). "Probable cause has been shown if the warrant application and affidavit describe circumstances showing 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Robinson*, 536 F.3d 874, 877 (8th Cir. 2008) (**quoting** *Gates*, 462 U.S. at 238). The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." [*Gates*, 462 U.S. at 238]. When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201 (1983). **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988) (**citing** *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added).

Giessinger's attack on the information provided by the confidential informant is misplaced. "A warrant affidavit [need not contain] an averment of previous reliability, the appropriate inquiry always being whether the informant's present information is truthful and reliable." *United States v. Scalia*, 993 F.2d 984, 987 (1st Cir. 1993) (**citing** *United States v. Cochrane*, 896 F.2d 635, 641 (1st Cir. 1990)). Information provided by a confidential informant is sufficiently reliable to support probable cause if independently corroborated. **See** *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998).

### 2. *Leon* Good Faith Exception

Even assuming *arguendo*, that probable cause was lacking in sufficiency or freshness, the *Leon* good faith exception would allow the admissibility of the evidence seized. **See** *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" *United States v. LaMorie*, 100 F.3d 547, 555 (8th Cir. 1996). There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

*Id.* (internal citations omitted).

None of those exceptions were present in this case. Accordingly, the officers could rely upon the search warrant and Giessinger's motion to suppress the results of the search warrant should be denied.

### 3. Giessinger's Statements

The Self-Incrimination Clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 637 (2004).

> [I]n *Miranda*, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated. To protect against this danger, the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief.

*Patane*, 542 U.S. at 639 (**citing** *United States v. Dickerson*, 530 U.S. 428, 434-35 (2000); *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).

There is no dispute the defendant was both in custody and being interrogated for purposes of the *Miranda* requirement. **See** *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005). The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278, 279 (1936). The court must look to the totality of circumstances in determining whether the statements were voluntary. *Mincey v. Arizona*, 437 U.S. 385, 401 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). In this case, the defendant was advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), both orally at the scene of the search and later in writing at Central Police Headquarters. There is no evidence Giessinger did not understand the advice of rights.

Even though the defendant was advised of his *Miranda* rights, the court must examine the conduct of the law enforcement officials to determine whether there was an overreaching by law enforcement officials amounting to coercive police activity. Coercive police conduct will render a confession inadmissible. *Blackburn v. Alabama*, 361 U.S. 199 (1960). In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne and his capacity for self-determination critically impaired. *United States v. Santos-Garcia*, 313 F.3d 1073,

1079 (8th Cir. 2002). There is no evidence coercive police pressure was employed in this case. The court finds Giessinger's statements were voluntarily made and were not the product of any illegal search by law enforcement officers. Giessinger's motion to suppress such statements should be denied.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Giessinger's motion to suppress (Filing No. 25) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 16th day of November, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge